Stephanie M. GARZA, Appellant,

v.

Xavier H. GARZA, Appellee.

No. 04–03–00888–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 10, 2004.

Per A. Hardy, Law Office of Per A. Hardy, James E. Hoffman, San Antonio, for appellant.

Jo Chris G. Lopez, Shaddox, Compere, Walraven & Goode, P.C., Michael W. Jackson, Wade B. Shelton, Shelton & Valadez, P.C., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

INTERLOCUTORY OPINION ON APPEAL OF ORDER SUSTAINING CONTEST TO AFFIDAVIT OF INABILITY TO PAY COSTS AND DENYING FREE RECORD

Opinion by SARAH B. DUNCAN, Justice.

Stephanie M. Garza appeals the trial court's order sustaining contests to her affidavit of inability to pay costs and denying her motion for a free record in her appeal of the trial court's judgment granting a divorce between Stephanie and her former husband Xavier. Xavier asks that we dismiss Stephanie's appeal as moot because she has accepted benefits from the same judgment she seeks to appeal. We hold the acceptance-of-benefits doctrine does not apply because Stephanie was compelled to accept the benefits of the judgment by her economic circumstances and therefore deny Xavier's motion to dismiss. We further hold the trial court abused its discretion in finding that Stephanie is able to pay the costs of appeal, because the undisputed evidence establishes otherwise, and therefore reverse the trial court's order sustaining the contests. Because the trial court did not determine whether Stephanie's grounds for appeal are frivolous or whether the record she requests is necessary to decide her appeal, we abate the appeal and remand the case to the trial court for further findings on these issues.

### FACTUAL AND PROCEDURAL BACKGROUND

As noted above, the trial court's judgment grants a divorce between Stephanie and Xavier Garza. The judgment also names Stephanie and Xavier joint managing conservators of their two young sons, gives Xavier the exclusive right to establish the children's primary residence, and orders Stephanie to pay child support and provide the children with health insurance. Finally, the judgment awards the family homestead to Xavier and orders him to pay to Stephanie $73,871, payable in sixty monthly installments of $1,428.13, for her equity in the homestead. The judgment was timely appealed by Stephanie, who also filed an affidavit of inability to pay costs. Stephanie's affidavit was contested by two court reporters and Xavier. *See* TEX.R.APP. P. 20.1(c). Xavier also moved for temporary orders, asking in part that enforcement of the judgment be suspended pending appeal or, alternatively, that he be

permitted to deposit the monthly payments to Stephanie for her equity interest in the marital homestead into the registry of the court. *See* TEX. FAM.CODE ANN. § 6.709 (Vernon 1998); *id.* § 109.001 (Vernon 2002). After the contests were filed, Stephanie moved for a free record on appeal, incorporating her affidavit of inability to pay costs, stating her grounds for appeal, and explaining her need for a record. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 13.003 (Vernon 2002).[1] A hearing ensued. The trial court took judicial notice of Stephanie's affidavit; and she testified, in detail and without dispute, regarding her income, assets, and debts, as well as her efforts to obtain a higher paying job and a loan to pay the costs of appeal.

Stephanie does not receive income from any person or entity other than her employer; she does not benefit from any other person's income or assets; and she is not the beneficiary of a trust. For twelve years, she worked as a certified music teacher. But, when her first child was born in 1997, she left her teaching position to stay home to take care of her child. After she and Xavier separated in the fall of 2002, Stephanie returned to full-time employment as a special education teaching assistant, a position she retained at the time of the hearing. Stephanie acknowledged that she is underemployed; however, there is no evidence that her underemployment is voluntary. To the contrary, the evidence establishes that, when Stephanie returned to the job market in the fall of 2002, she applied to several school districts and took the only job she was offered. Sometime thereafter, she applied to fill an open position as a theater arts teacher; but she was not qualified for that position and was not offered the job. She has also had ongoing discussions with school administrators about moving into a certified position when one for which she is qualified becomes available. Although Stephanie expects a certified position to eventually become available, there is no evidence that one was available at any time after the separation and before the hearing.

As a special education teaching assistant, Stephanie receives a gross monthly income of $1,463.24. But, from this amount, the school district withholds approximately $696—$232 for court-ordered child support, $297 for health insurance for Stephanie and her children, and approximately $167 for income, Social Security, and Medicare taxes.[2] Stephanie therefore takes home only about $767 each month. But Stephanie's fixed expenses exceed $2,100. She pays $710 for rent, $278 for utilities, $207 on her car note, $75 for car insurance, $28 for gasoline, and $460 for groceries and her children's clothes, entertainment, and incidental school expenses. Because her fixed expenses exceed her take-home pay, Stephanie has incurred over $8,600 in credit card debt since the separation and must pay $210 each month to cover the minimum payments due. Stephanie has other debt on which she is making no payments. Stephanie must also pay between $150 and $200 each month for recurring out-of-pocket medical expenses related to her diabetes—$25 for each doc-

---

1. Under section 13.003(a), an appellant must be provided with a free record if an affidavit of inability to pay costs has been filed, the trial judge finds the appeal is not frivolous, and the record is needed to decide the appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 13.003(a) (Vernon 2002).

2. Although Stephanie testified that taxes are withheld from her paycheck, her affidavit failed to include the taxes as expenses. Nevertheless, we are able to estimate that Stephanie's 2003 monthly taxes would be at least $167. *See* TEX. FAM.CODE ANN. § 154.061(b) (Vernon Supp.2003).

tor visit, $85 for her insulin pump and pump supplies, and $50 for insulin and other prescription drugs. In short, the undisputed testimony establishes that Stephanie's basic living expenses and the minimum required payments on her outstanding debt are in excess of $2,100 a month, while her net monthly income is $767. To bridge the gap between her income and expenses, Stephanie has defrayed her living expenses with the three payments she has received from Xavier for her equity interest in the marital homestead. Other than her equity interest in the marital homestead, Stephanie owns no real property; and her only personal property is the furniture in her apartment, which is of minimal value, and her car. She has a checking account but it has a zero balance; and she has no other cash, bank accounts, stocks, bonds, or other investments. She thus has no assets she can convert to pay the costs of appeal.

Between May 2002 and February 2003, after Stephanie and Xavier separated, Stephanie's father and his wife loaned Stephanie $33,800, for which she signed a promissory note. When asked whether this loan was not really just a gift to help her get by, Stephanie testified "not in my family." She has not asked her family for more money because, when they asked in January 2003 that she start making monthly payments on the note, she was unable to do so. She has applied for loans at two banks and been turned down. Stephanie also testified she used over $30,000 of the loan from her family to pay her attorneys; the remainder of the loan was used for her living expenses before she got a job. Nonetheless, she still owes her attorneys over $54,000 for their services through trial. Stephanie's attorneys have not agreed

to advance her the estimated $11,500 to $13,000 cost of the record.

At the conclusion of the hearing, the trial court ordered Xavier to deposit the payments due Stephanie for her equity interest in the homestead into the registry of the court "until the appeal is resolved and disposition of the funds on deposit is determined by final judgment."[3] In doing so, the trial judge expressly stated he did not want Stephanie to have access to these funds to pay for her appeal. The trial court also sustained the contests to Stephanie's affidavit of inability to pay costs and denied her motion for a free record, stating as follows:

> I am going to deny the affidavit of indigency. I have ruled on many affidavits of indigency on appellate records. If I granted this one I would be granting it on every case I have ever had before me. I just can't do it under the circumstances.

Frankly, we are at a loss to understand the trial judge's comments in light of the record at the hearing on the contests. But before considering the trial court's ruling on the contests, we must first resolve Xavier's motion to dismiss. *See Bloom v. Bloom,* 935 S.W.2d 942, 945 (Tex.App.-San Antonio 1996, no writ) (recognizing that if acceptance-of-benefit doctrine applies, appeal is rendered moot and must be dismissed).

## MOTION TO DISMISS

In his motion to dismiss, Xavier argues Stephanie's appeal is moot and must be dismissed under the acceptance-of-benefits doctrine. We disagree.

 Under the acceptance-of-benefits doctrine, "[a] litigant cannot treat a judg-

---

**3.** In a separate opinion, we hold the trial court did not abuse its discretion in ordering Xavier to deposit the payments into the regis-

try of the court. *In re Garza,* 153 S.W.3d 97 (Tex.App.-San Antonio, orig. proceeding).

ment as both right and wrong...." *Carle v. Carle,* 234 S.W.2d 1002, 1004, 149 Tex. 469 (1950). Accordingly, if a party *"voluntarily* accept[s] the benefits of a judgment," she is barred by the acceptance-of-benefits doctrine from appealing it. *Id.* (emphasis added). Because the doctrine applies only to a voluntary acceptance of benefits, it does not apply to a party who is compelled to accept the benefits of a judgment by "economic circumstances." *Smith v. Texas Commerce Bank–Corpus Christi, N.A.,* 822 S.W.2d 812, 814 (Tex.App.-Corpus Christi 1992, writ denied). Therefore, the acceptance-of-benefits doctrine does not apply to a party who accepts benefits awarded in a divorce decree to provide for necessities. *See Smith v. Smith,* 143 S.W.3d 206, 212 (Tex.App.-Waco 2004, no pet. h.); *McAlister v. McAlister,* 75 S.W.3d 481, 484 (Tex.App.-San Antonio 2002, pet. denied); *Cooper v. Bushong,* 10 S.W.3d 20, 23–24 (Tex.App.-Austin 1999, pet. denied); *Haggard v. Haggard,* 550 S.W.2d 374, 376–77 (Tex.Civ.App.-Dallas 1977, no writ).

■ Stephanie's uncontroverted testimony establishes that her expenses far exceed her income; she has no other assets she can use to pay for necessities; and she therefore used the three payments for her equity in the marital homestead to pay for her basic living expenses. Under these circumstances, we hold Stephanie's acceptance of benefits from the judgment was not voluntary. *See id.* We therefore hold the acceptance-of-benefits doctrine does not apply and deny Xavier's motion to dismiss.

### INABILITY TO PAY COSTS

■ Stephanie argues the trial court abused its discretion in sustaining the contests to her affidavit of inability to pay costs. We agree.

■ The party filing an affidavit of inability to pay costs bears the burden of proving the allegations in the affidavit. TEX.R.APP. P. 20.1(g). She must prove by a preponderance of the evidence that she would be unable to pay costs "'if [s]he really wanted to and made a good faith effort to do so.'" *Griffin Indus., Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 351 (Tex.1996) (quoting *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex.1980)). On appeal, we review the trial court's ruling under the abuse of discretion standard. *White v. Bayless,* 40 S.W.3d 574, 576 (Tex. App.-San Antonio 2001, pet. denied). "With respect to resolution of factual issues," the trial court abuses its discretion if the record establishes it "could reasonably have reached only one decision," and it fails to do so. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

As set forth more fully above, Stephanie's uncontroverted testimony establishes that she receives monthly take-home pay of $767, while her monthly expenses exceed $2,100;[4] and she has no assets she can convert to pay the costs of appeal. Nonetheless, Xavier argues the trial court properly sustained the contests because Stephanie is underemployed and failed to prove she has made a good faith effort to supplement her income; and she failed to prove she has tried to secure advances on her credit cards or borrow lower amounts from commercial lenders. Neither argument has merit.

As discussed more fully above, Stephanie acknowledged that she is currently underemployed and detailed her as yet unsuccessful efforts to obtain a higher-paying

---

4. Our analysis does not include the payments Xavier has been ordered to deposit into the registry of the court because, so long as these funds remain in the registry of the court, they are not available to Stephanie for any purpose, including paying the costs of appeal.

job. Xavier also criticizes Stephanie's failure to obtain employment during the summer of 2003 or get additional part-time employment. However, Stephanie testified that, although she is generally available to work another job in the three summer months and intends to do so, she was not able to do so during the summer of 2003, because she went on an insulin pump, requiring two or three doctor visits a week for a month to receive training, check her insulin levels, and get counseling. She also testified that her applications for several part-time jobs have been rejected. The difficulty, she testified, is finding a part-time job that will accommodate her regular work schedule, her regular doctor appointments, and her scheduled visitation with her children.

Xavier's second argument in support of the trial court's ruling is equally without merit. Stephanie's uncontradicted testimony regarding her fixed expenses establishes that whatever credit might be advanced on her credit cards will be needed to pay her living expenses so long as her appeal remains pending and the funds representing her equity interest in the marital homestead remain on deposit in the court's registry. Stephanie's uncontradicted testimony also establishes that she has tried unsuccessfully to borrow money from commercial lenders; however, she has "no collateral and no income stream to secure a loan from any reasonable commercial lender. Requiring her to obtain formal loan rejections would exalt form over substance, as such rejections would 'merely buttress th[e] conclusion that she is financially unable to meet any of the court costs or give security therefor.'" *Griffin Indus., Inc. v. Thirteenth Court of Appeals,* 934

S.W.2d 349, 351 (Tex.1996) (quoting *Goffney v. Lowry,* 554 S.W.2d 157, 160 (Tex. 1977)).

Finally, Xavier argues that, because "Stephanie's family is quite wealthy,"[5] she could borrow the costs of appeal from her father or make arrangements for a payment schedule with the court reporters. However, as established by Stephanie's uncontradicted testimony, she has signed a note to repay her family the $33,800 that her family has already loaned her; her family expects her to repay the loan; and she is unable to make the payments already due and owing, much less any additional payments on even more debt. "The rules allowing one to proceed without being required to pay costs or give security therefor ... do not require the litigant to borrow money which cannot be repaid except by depriving the litigant of the necessities of life." *Goffney,* 554 S.W.2d at 159. Nor do they require a litigant to prove she has exhausted all potential sources of charity. *Id.* at 160.

Stephanie's uncontradicted affidavit and testimony establish that her monthly living expenses far exceed her income; and she does not have the ability to borrow the funds to pay the estimated $11,500 to $13,000 required for an appellate record. Even if she could borrow the money, she would then not have the ability to make the payments that would become due. On this record, we hold the trial court could reasonably have reached only one decision—Stephanie is unable to pay the costs of appeal. We therefore hold the trial court abused its discretion in sustaining the contests.

---

**5.** Although Xavier testified that Stephanie's father is the chief operating officer of an international feed company and owns a great deal of land in Iowa, Xavier admitted that, during his marriage to Stephanie, her father had provided them with no financial assistance. Xavier also admitted that he had no personal knowledge of Stephanie's father's financial situation in the two years since he and Stephanie had separated.

## Motion for Free Record

Finally, Stephanie argues the trial court abused its discretion in denying her motion for a free record. In response, Xavier argues that Stephanie has failed to "preserve her complaint that she is entitled to a free record" by failing to obtain findings on whether her appeal is frivolous and whether a record is needed to decide it. We disagree. The record establishes Stephanie timely filed a motion for a free record, which the trial court denied. No more is required. *See* Tex.R.App. P. 33.1(a) (preservation requires only that record establish that complaint was timely made to the trial court and ruling). It is true, however, that because the trial court sustained the contests to Stephanie's affidavit of inability to pay costs, it did not reach these issues. *See Baughman v. Baughman,* 65 S.W.3d 309, 315 (Tex.App.-Waco 2001, pet. denied). Our decision today requires that these issues be decided. Stephanie asks this court to decide these issues and reverse the trial court's order denying her a free record. But whether a ground for appeal is frivolous necessarily involves questions of both fact and law; consequently, this issue must be decided by the trial court in the first instance. *See De La Vega v. Taco Cabana, Inc.,* 974 S.W.2d 152, 154 (Tex.App.-San Antonio 1998, no pet.). Accordingly, we abate the appeal and remand the case to the trial court to make the findings required by section 13.003(a)(2). *See* Tex. Civ. Prac. & Rem.Code Ann. § 13.003 (Vernon 2002).

## Conclusion

Although Stephanie accepted benefits from the same judgment she seeks to appeal, she did so not voluntarily but out of economic necessity. We therefore hold the acceptance-of-benefits doctrine does not bar her appeal and deny Xavier's motion to dismiss. And, because the record on Stephanie's financial situation reasonably yields only one conclusion—she does not have the income or assets to pay or borrow the costs of appeal—we hold the trial court abused its discretion in sustaining the contests. We therefore abate the appeal and remand the case to the trial court to make the findings required by section 13.003(a)(2) regarding whether Stephanie's appellate issues are frivolous and whether a record is needed to decide them.

SANDEE BRYAN MARION, J., dissents.

SANDEE BRYAN MARION, Justice, dissenting.

The majority holds that the trial court abused its discretion because the "undisputed evidence" establishes that Stephanie cannot pay the costs of appeal. Because I disagree with that conclusion, I respectfully dissent.

The burden of proof at a hearing on a contest to the affidavit of indigency rests on the appellant to sustain the allegations in the affidavit. *Griffin Indus., Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 351 (Tex.1996) (orig.proceeding); Tex. R.App. P. 20.1(g). The test for indigence is whether a preponderance of the evidence shows that the party would be unable to pay costs "if [s]he really wanted to and made a good faith effort to do so." *Griffin Indus., Inc.,* 934 S.W.2d at 351 (quoting *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex. 1980)). When the trial court sustains a contest, the court of appeals must decide whether the trial court abused its discretion. *White v. Bayless,* 40 S.W.3d 574, 576 (Tex.App.-San Antonio 2001, pet. denied). To show a clear abuse of discretion, the appellant must show that, under the circumstances of the case, the facts and law permit the trial court to make but one decision. *Cronen v. Smith,* 812 S.W.2d 69,

71 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding).

Stephanie is a bright, capable woman, who graduated from college cum laude. After she graduated from college, Stephanie worked as a certified music teacher and then advanced to choir director of her school. In addition to her teaching and choir director position, she taught voice lessons after school.

Stephanie is qualified to hold the position of a full-time certified teacher in Texas secondary schools; however, she testified she was unable to find such a position in the Boerne Independent School District. Instead, since October 2002, she has been employed as a teacher's assistant in the Boerne school district. Stephanie said she sought a full-time position with two other school districts in the Fall of 2002. She admitted she had made no further attempts to find a full-time position in another school district since the Fall of 2002.

As an employee of the Boerne school district, Stephanie works from 8:00 a.m. to 3:30 p.m. during the school year, and she is paid over a twelve month period although she has time off during the Christmas holiday break and from early June through mid-August for the Summer break. Stephanie testified that because the children's primary residence is with their father, she has more free time now than when she was married. She said that although she is ready, willing, and able to work at an additional job, she has been unable to find such work. However, she has applied for additional work only twice, in the Summer of 2003 for the Summer program at a Montessori School and in early Fall 2003 at a Chili's restaurant.

The record also establishes that Stephanie has assets, albeit few, and she has available credit. Stephanie was awarded $73,871 as her equity in the family homestead, although Xavier currently is depositing the monthly payments into the court's registry. Although she listed a debt of $33,000 to her father, of which $30,000 was paid to her attorneys, Stephanie agreed that she did not expect her father to pursue any legal action against her to collect the debt.

These facts do not permit only one decision. The trial court did not file findings of fact; therefore, we may infer omitted findings in support of the judgment. *See Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 251–53 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Viewing the evidence in the light most favorable to the court's ruling and drawing all reasonable inferences in favor of the court's order on the contests, I believe the trial court impliedly found that Stephanie had not made a good faith effort to pay her costs. Because such an implied finding is supported by the record, I would hold the trial court did not abuse its discretion in sustaining the contests to Stephanie's affidavit of inability to pay costs.